## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **STUDENT DOE**, | |
| **Plaintiff,** | |
| **v.** | **Case No.**   4:25-cv-664 |
| | **COMPLAINT** |
| **KRISTI NOEM**, in her official capacity as Secretary of Homeland Security; the **DEPARTMENT OF HOMELAND SECURITY**; and **TODD LYONS**, in his official capacity as Acting Direct of U.S. Immigration and Custom Enforcement, | |
| **Defendants.** | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      International students, like Plaintiff, come from all over the world to the United States to obtain a world-class education and practical training in an effort to build their best future.

2.      These students make significant investments in their education and bring to the United States their talents, ambitions, and dreams.

3.      Some of these students augment their education with work opportunities through Curricular Practical Training ("CPT") and Optional Practical Training ("OPT").

4.     Many of these students, after completing their education and training, seek to change to other visa categories, while others leave the United States to return home after completing their education.

5.     The United States, through Congress, has long recognized the benefits of offering international students the opportunity to come to this country to better their educational opportunities.

6.     Congress authorized nonimmigrant student status for foreign nationals who enroll in government-approved academic institutions. 8 U.S.C. § 1101(a)(15)(F).

7.     Foreign students apply for admission to the United States with an F-1 visa and, once admitted, are described as being "F-1 student status."

8.     An academic institution must obtain formal approval from the U.S. Department of Homeland Security ("DHS") before it can sponsor a student's F-1 status, including the submission of detailed information and supporting evidence on: programs of study; accreditations and recognitions; calendar, costs, and demographics; campus locations and instructional sites; and designated school officials responsible for administering the program.

9.     Once an academic institution obtains DHS approval, it must submit to periodic recertification to continue sponsoring students' F-1 status.

10.     The Student and Exchange Visitor Information System ("SEVIS") is a government database that tracks international students' compliance with their F-1 status.

11.     U.S. Immigration and Customs Enforcement ("ICE"), through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor student status.

2

12.     In April 2025, Defendants systematically terminated student status within the SEVIS registration system unlawfully, without notice, and without due process. The termination of a SEVIS record effectively ends F-1 student status.

13.     Plaintiff Student Doe ("Plaintiff") is one of the F-1 students nationwide whose SEVIS records was abruptly and unlawfully terminated by ICE.

14.     In essence, Defendants identified students lawfully in the United States as students and stripped them of their legal status, depriving them of their ability to continue or complete their education and/or practical training and/or subjecting said students, Plaintiff included, to an imminent risk of suffering a wide range of adverse harms and consequences, presently and continuing in the future, arising from Defendants' unlawful course of action.

15.     On information and belief, Defendants took this action to create chaos and uncertainty in an effort to cause these students to abandon their studies and leave the United States.

16.     According to ICE, when a SEVIS record is terminated, the impacted student loses all on- and/or off-campus employment authorization, cannot re-enter the United States, and ICE agents may open investigations to confirm the departure of a student, and any associated F-2 or M-2 dependent records are terminated.[1]

17.     The grounds ICE cites in Plaintiff's SEVIS terminations do not establish legal grounds to terminate Plaintiff's SEVIS records.

---

[1] ICE SEVIS Help Hub-Terminate a Student (https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student) (accessed April 30, 2025).

18.     An F-1 visa authorizes a student's application for admission into the United States, not the period during which an F-1 student is authorized to remain in the United States once lawfully admitted in F-1 status.

19.     Plaintiff was in full compliance with the terms of his F-1 status and had not engaged in any conduct that would warrant termination of that status.

20.     While Defendants have temporarily restored the SEVIS registration of certain students, the rights, interests and nonimmigrant status of the students who were subjected to the Defendants' unlawful conduct are presently and will in the future incur risk of and/or suffer adverse effects and consequences, thereby entitling Plaintiff to the relief and remedies necessary to restore not only himself but other students to reinstatement of their SEVIS registration and lawful nonimmigrant F-1 status *nunc pro tunc*, as if the unlawful conduct in terminating SEVIS registration had never occurred.

21.     Defendants' actions and the resulting present and/or future effects thereof are in direct conflict with the laws of the United States.

22.     ICE cannot misuse SEVIS to circumvent the law, unlawfully strip students of status, and drive them out of the United States without due process.

23.     The termination of SEVIS records has shaken campuses across the United States, including campuses located in the Central District of California.

24.     Though certain students have had their SEVIS record reinstated, Defendants have made public statements that the reinstatements are temporary, thereby presenting a present and ongoing risk of imminent harm.[2]

25.     Plaintiff brings this action under the Administrative Procedure Act ("APA"), the Fifth Amendment of the United States Constitution, and the Declaratory Judgment Act to challenge ICE's illegal termination of their SEVIS records and to restore his status without present or future effects arising or resulting from Defendants' actions and course of unlawful conduct.

26.     Defendants' actions have caused and continue to cause irreparable harm, injury and damage to Plaintiff, including by stripping Plaintiff of legal status; threatening Plaintiff's ability to remain in or return to the United States and travel to other countries; depriving Plaintiff of his education and career opportunities; impacting Plaintiff's present and future immigration status; and subjecting Plaintiff to fear of arrest and detention, financial hardship, emotional distress, and loss of employment and other opportunities.

27.     Courts throughout the United States, including this Court, have granted temporary restraining orders, or other immediate relief, finding a likelihood of success on the merits where plaintiffs facing substantially similar irreparable harm have challenged SEVIS termination. *See, e.g., Liu v. Noem*, No. 25-cv-133-SE (D.N.H. Apr. 10, 2025); *Wu v. Lyons*, No. 25-cv-01979-NCM (E.D.N.Y. Apr. 11, 2025); *Arizona Student Doe #2 v. Trump*, No. 25-cv-00175-TUC-AMM (D. Ariz. Apr. 15, 2025); *Zhou v. Lyons*, No. 2:25-

---

[2] See *Jane Doe 1, et al. v. Bondi, et al.,* 1:25-cv-01998-VMC, ECF Doc. 43 (N.D. GA, May 2, 2025).

cv-02994-CV-SK (C.D. Cal. Apr. 15, 2025); *Ratsantiboon v. Noem*, No. 25-cv-01315-JMB-JFD (D. Minn. Apr. 15, 2025); *Roe v. Noem*, No. CV-25-40-BU-DLC (D. Mont. Apr. 15, 2025); *Student Doe v. Noem*, No. 2:25-cv-01103-DAD-AC (E.D. Cal. Apr. 17, 2025); *Doe v. Noem*, No. 4:25-cv-03140-JSW (N.D. Cal. Apr. 17, 2025); *Ziliang v. Noem*, No. 25-cv-1391-PSM-DLM (D. Minn. Apr. 17, 2025); *Patel v. Bondi*, No. 1:25-cv-00101-SPB-WSH (W.D. Pa. Apr. 17, 2025); *Doe v. Noem*, No. 2:25-cv-00633 (W.D. Wash. Apr. 17, 2025); *Doe I v. Bondi*, No. 1:25-cv-01998-VMC (D. Georgia Apr. 19, 2025); *Student Doe #1 v. Trump*, No. 2:25-cv-02825-MCA-LDW (D.N.J. Apr. 18, 2025); *Jane Doe 1, et al. v. Bondi, et al.,* 1:25-cv-01998-VMC, ECF Doc. 43 (N.D. GA, May 2, 2025).

28.     Plaintiff is entitled to preliminary and permanent injunctive relief in the form of, *inter alia*, restoration of his SEVIS records without interruption or adverse notations, preservation of his legal status *nunc pro tunc* without interruption and preserving the *status quo ante* prior to the Defendants' unlawful conduct,  attorneys' fees under the Equal Access to Justice Act, and such additional and further relief as this Court deems just and proper under the facts and circumstances of the case.

## JURISDICTION AND VENUE

29.     Plaintiff incorporates the allegations in the preceding paragraphs, as if fully restated herein.

30.     This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), 28 U.S.C. § 2201-2 (authority to issue declaratory judgment when jurisdiction already exists), and the United States Constitution.

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are employees of officers of the United States, acting in their official capacities.

32.     Further, venue is proper because Plaintiff resides in St. Louis, Missouri.

## PARTIES

33.     Plaintiff is an international student in lawful F-1 status, enrolled at the Lindenwood University. He resides in St. Louis, Missouri.

34.     Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority of DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of federal immigration laws. Defendant Noem is sued in her official capacity.

35.     Defendant U.S. Department of Homeland Security is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including ICE.

36.     Defendant Todd Lyons is the Acting Director of ICE and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of federal immigration laws. ICE is responsible the termination of Plaintiff's SEVIS records. Defendant Lyons is sued in his official capacity.

## LEGAL FRAMEWORK

37.     Plaintiff incorporates the allegations in the paragraphs above as though fully set forth herein.

38.     Congress established a statutory basis for student visas under 8 U.S.C. § 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course study to maintain nonimmigrant status.

39.     Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.3(g)(2), such as maintaining a full course study and avoiding unauthorized employment.

40.     An F-1 visa authorizes a student's application for admission into the United States, not the period during which an F-1 student is authorized to remain in the United States once lawfully admitted in F-1 status.

41.     The SEVIS is centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors, and track their compliance with terms of their status.

42.     Under 8 C.F.R. § 214.3(g)(2), Designated School Officials must report through SEVIS to SEVP when a student fails to maintain status.

43.     SEVP policy and regulations govern SEVIS termination, and termination must be based on a student's failure to maintain status.

44.     DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status."

45.     "Failure to maintain status" involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of the status requirements under 8 C.F.R. § 214.2(f).

46.     In addition, 8 C.F.R. §§ 214.1(e)-(g) outline specific circumstances where certain conduct by a nonimmigrant visa holder, such as providing false information to DHS or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

47.     With respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes failure to maintain status...."

48.     Minor misdemeanor offenses do not meet this threshold for termination based on criminal history.

49.     The second category, "termination of status" by DHS, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which permits DHS to terminate status only if: (1) a previously granted waiver under INA § 212(d)(3) or (4) [8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register

identifying national security, diplomatic, or public safety reasons for termination. DHS cannot otherwise unilaterally terminate nonimmigrant status.

50.     Once a student's SEVIS record is terminated, the student is no longer in an authorized period of stay in the United States.

51.     When a student's SEVIS record is terminated, any associated F-2 or M-2 dependent records are also terminated.

52.     Upon termination, these students lose all employment authorization they received while in student status.

53.     An F or M class student who is out of nonimmigrant status must leave the United States, and any such student outside the United States cannot reenter the country.

54.     Further, ICE may investigate and confirm the departure of any such student.

55.     The revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination.

56.     If a visa is revoked prior to the student's arrival to the United States, then a student cannot enter and the SEVIS record is terminated.

57.     However, the SEVIS record may not be terminated as a result of a visa revocation after a student has been admitted into the United States because the student is permitted to continue the authorized course of study.[3]

---

[3] ICE Policy Guidance 1004-04 - Visa Revocations (June 7, 2010), available at Visa revocations are an important tool in maintaining the security of our borders and our nation.

58.    ICE's own guidance confirms that "[v]isa revocation is not, in itself, as cause for termination of the student's SEVIS record."[4]

59.    Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[5]

60.    While a visa revocation can be charged as grounds of deportability in removal proceedings, deportability can be contested in such proceedings.[6]

61.    The immigration judge may dismiss removal proceedings where a visa is revoked, so long a student is able to remain on valid status.[7]

62.    Valid nonimmigrant status is lost only when a final removal order is entered.

63.    A student who has not violated their F-1 status, even if their visa is revoked, cannot have their SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA § 237(a)(4)(C)(i) [8 U.S.C. § 1227 (a)(4)(C)(i)] (foreign policy grounds), or any other deportability ground for that matter.

64.    Further, the Foreign Affairs Manual states that under no circumstances should an individual's visa be revoked if that individual is in the United States, or after the

---

[4] *Id.*

[5] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at DOS Guidance Directive 2016-03 on Visa Revocation.

[6] *See* U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration review of visa revocation).

[7] 8 C.F.R. § 1003.18(d)(1)(D).

individual has commenced an uninterrupted journey to the United States, other than a revocation based on driving under the influence.[8]

65.     Immigration courts have no ability to review SEVIS termination here because the process is collateral to removal.[9]

66.     There is no administrative appeal of a denial to reinstate F-1 status.

67.     The termination of a SEVIS record constitutes final agency action for purposes of APA review.[10]

## ALLEGATIONS OF FACTS

68.     Plaintiff incorporates the allegations in the paragraphs above as though fully set forth herein.

69.     Plaintiff is a 33-year-old graduate student at Lindenwood University who has been pursuing a Master's Degree in Business Administration since September 2024.

70.     Plaintiff is a national and citizen of the Kingdom of Spain.

71.     Plaintiff first came to the United States in August 2018 under a J-1 nonimmigrant status to complete an Au Pair program.

72.     Upon entry into the United States, he then applied to change his status from J-1 to F-1 nonimmigrant student in 2020 to complete a Bachelor's Program in Business

---

[8]   9   FAM   403.11-3(B)   –   NIV   REVOCATION   (April   29,   2025),   available   at https://fam.state.gov/fam/09FAM/09FAM040311.html; *see also* 9 FAM 403.11-5(B) (stating that any prudential revocation for driving under the influence must meet additional procedural requirements regarding obtaining information on criminal history); *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115 (2d Cir. 2009) (holding that prudential revocation is not a determination of inadmissibility).

[9] *See Nakka v. United States Citizenship and Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customers Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

[10] *See Fang*, 935 F.3d at 185.

12

Administration and Management at Lindenwood University in St. Charles, Missouri. The program ran from August 2020 to May 2024.

73.     On February 5, 2023, Plaintiff was arrested for Driving While Intoxicated in the City of Ladue, Missouri ("2023 Criminal Case").

74.     Plaintiff was charged for (1) improper lane use; (2) expired state operating license; and (3) operating a vehicle intoxicated—alcohol. The prosecutor recommended to amend charges 1 and 2 to two separate counts of illegal parking in street alley, and amend charge 3 to miscellaneous health and safety.

75.     Plaintiff plead guilty to all three amended counts and was ordered to pay fines. Plaintiff paid the fines, closing the criminal case.

76.     Plaintiff then received his Bachelor's Degree on December 30, 2024. Following graduation, Plaintiff completed his Post-Completion Optional Practical Training.

77.     On September 12, 2024, Plaintiff departed the United States.

78.     After departing the United States, Plaintiff received a notice of F-1 visa revocation from the United States Embassy in Madrid, Spain on or about October 8, 2024.

79.     Plaintiff believed this notice of visa revocation was a scam or a phishing attempt. Plaintiff immediately contacted Lindenwood University to confirm the revocation. Lindenwood University indicated that his I-20, Certificate of Eligibility for Nonimmigrant Student Status, was still valid. His I-20 is valid as of the filing of this Complaint.

80.     On November 18, 2024, Plaintiff arrived at an international airport to return to the United States; however, he was advised that he could not enter the United States because he does not possess a valid F-1 visa.

81.     Plaintiff proceeded to apply for another F-1 visa for the Master's Program at Lindenwood University.

82.     Plaintiff was accepted into the program, which runs from January 13, 2025 through December 30, 2027.

83.     In order to be admitted to the United States in valid F-1 status to attend his Master's Program, through separate counsel, Plaintiff applied for an F-1 Visa by completing a DS-160 Application for Nonimmigrant Visa.

84.     In Plaintiff's DS-160, Plaintiff disclosed all pertinent information in the DS-160, including his 2023 criminal case.

85.     In compliance with DS-160, Plaintiff completed a medical examination which is required for the United States Embassy to adjudicate the DS-160 required to issue him an F-1 visa.

86.     Plaintiff was approved an F-1 visa. Through approval, he was able to be admitted to the United States on January 13, 2025 in valid F-1 status.

87.     In April of this year, Plaintiff learned that ICE had terminated his SEVIS status and his student visa been revoked.

88.     The codes given for the termination were: (1) INA 237(a)(1)(C)(i) – Failure to maintain status; and (2) INA 237 (a)(4)(C)(i) – Foreign policy grounds.

89.     Plaintiff is unaware of the factual basis for termination of his SEVIS status.

14

90.    Plaintiff has no criminal history containing crimes of violence that carry a potential sentence of more than one year.

91.    Plaintiff is directly harmed by and as a result of the termination and/or threatened termination of his SEVIS records and status.

92.    Since he received notice of the SEVIS termination, Plaintiff has experienced high levels of distress and anxiety based on, inter alia, uncertainty of his status, fear of deportation or other adverse consequences, loss of investment of time, effort and money in education, and risks and concerns regarding present and future effects of SEVIS termination.

93.    Upon information and belief, the SEVIS terminations have created havoc and uncertainty for schools, which were not afforded any advanced notice or further explanation for the termination of SEVIS status and are scrambling to respond to Defendants' unprecedented actions.

94.    Defendants developed and instituted a uniform policy and course of conduct to terminate Plaintiff's and other international student's SEVIS registration without cause in derogation of the APA and Plaintiff's rights to due process.

95.    Plaintiff has suffered present and ongoing harm, injury, and loss by the following:

    (a)    The termination of SEVIS registration and the loss of status;

    (b)    ICE policy changes, including the imminent threat of further action contrary to Plaintiff's rights and interests in preserving and maintaining lawful status in the U.S.;

(c)     Significant and unresolved issues and questions regarding ICE policy, the status of reinstatement of SEVIS registration, and whether such reinstatement is retroactive *nunc pro tunc* to the date of unlawful termination and without any loss, interruption of other adverse effect of Plaintiff's legal status; and

(d)     Risk of future harms, actions, effects, and consequences arising from the Defendants' unlawful termination of SEVIS registration.

96.     Court intervention is necessary to remedy Defendants' illegal conduct and the past, present, and future harms resulting from that conduct.

97.     Courts throughout the United States have enjoined Defendants from terminating SEVIS registrations without cause on likelihood of success on the merits, imminent risk of irreparable harm, APA claims, and Due Process claims, among other grounds.[11]

98.     Due to Defendants' unlawful actions and course of conduct and notwithstanding the restoration of his SEVIS status, Plaintiff is subject to an imminent risk of harm and adverse consequences arising from Defendants' unlawful actions, which risks are clear, apparent and imminent based on, *inter alia*, vague and conflicting statements of ICE policy regarding SEVIS registration, ICE's claim of entitlement and/or intention to terminate SEVIS registration on new or additional grounds including based on the revocation of a visa, the present, ongoing,  and future effects of the unlawful termination

---

[11] *See* Paragraph 27, *supra*.

of SEVIS registration, and the temporary, partial and/or incomplete restoration of Plaintiff's SEVIS registration and status.

99. Notwithstanding Plaintiff's reinstatement of SEVIS registration, Defendants' actions and course of conduct subjects him to present, ongoing and future harms, adverse effects and deleterious consequences, including:

      (a)    Plaintiff being subject to arrest, detention and/or removal for being out of status, even if temporarily;

      (b)    Plaintiff may be precluded from changing or adjusting immigration status due to interruption and/or adverse notations caused by or arising from Defendants' unlawful termination of SEVIS registration;

      (c)    Plaintiff may lose or be precluded from seeking to apply for or extend certain immigration-related programs such as OPT/STEM due to the loss of status;

      (d)    Plaintiff may be required to report a period of unauthorized stay in the United States that could cause or generate adverse immigration-related decisions; and

      (e)    Plaintiff could be subjected to adverse consequences due to allegations of unauthorized presence and/or employment in the United States.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Administrative Procedure Act
(*Unauthorized SEVIS Termination*)

100. Plaintiff incorporates the allegations above as if fully set forth herein.

101. Defendants' actions have denied and continue to deny Plaintiff's due process rights.

102.    Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; ... [or] without observance of procedure are required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

103.    Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS records or status based on revocation of a visa.

104.    Additionally, nothing in Plaintiff's criminal histories provide a basis for termination.

105.    Defendants' terminations of Plaintiff's SEVIS status has caused him severe economic and emotional harm.

106.    For example, as a business student, Plaintiff faces losing his opportunity to pursue and obtain his Master's in Business Administration over a non-violent irrelevant criminal charge that occurred years ago and fully disposed.

107.    Plaintiff invested everything into his studies and is now at risk of losing his studies and facing imminent financial hardship.

108.    Plaintiff also faces separation from family members, friends, and communities he built while in the United States. He faces loss of medical insurance while struggling with worsening depression and anxiety due to Defendants' unlawful actions and course of conduct. He also faces losing his homes, pets, and possessions, among a litany of other concerns.

109.   Plaintiff is entitled to the restoration of lawful SEVIS registration and status *nunc pro tunc*, to avoid adverse effects and consequences present and/or arising in the future.

110.   Therefore, Defendants' termination of Plaintiff's SEVIS status, and the present and/or future effects thereof, is not in accordance with law, is in excess of statutory authority, and is without observation of procedure required by law.

## SECOND CAUSE OF ACTION

### Fifth Amendment
(*Procedural Due Process*)

111.   Plaintiff incorporates the allegations in the paragraphs above as though fully set forth herein.

112.   Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

113.   Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations.

114.   Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiff has a constitutionally protected property interest in his SEVIS registrations. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015)

(recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

115.    Defendants terminated Plaintiff's SEVIS records based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond.

116.    Defendants' failure to provide notice of the facts that formed the basis for the SEVIS termination and to fully restore his rights without present and future adverse effects and consequences are violations of due process under the Fifth Amendment.

### THIRD CAUSE OF ACTION

**Administrative Procedure Act**
(*Procedural Due Process*)

117.    Plaintiff incorporates the allegations in the paragraphs above as though fully set forth herein.

118.    Defendants' actions have denied Plaintiff's due process.

119.    Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

120.    Defendants terminated Plaintiff's SEVIS records based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond.

121.    Defendants' failure to provide notice of the facts that formed the basis for the SEVIS terminations are violations of due process under the Fifth Amendment.

122.    Accordingly, Defendants' actions are contrary to Plaintiff's constitutional rights.

## FOURTH CAUSE OF ACTION

### Administrative Procedure Act
*(Arbitrary and Capricious SEVIS Termination)*

123.    Plaintiff incorporates the allegations in the paragraphs above as though fully set forth herein.

124.    Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. § 706(2)(A).

125.    Defendants' failed to articulate facts that formed the basis for their decision to terminate Plaintiff's SEVIS statuses in violation of the APA, let alone any rational connection between the facts found and the decision made.

126.    Defendants' actions are therefore arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(a)    Assume jurisdiction over this matter;

(b)    Declare that the termination of Plaintiff's SEVIS status was and is unlawful and deprived him of due process;

(c)    Vacate and set aside DHS's termination of Plaintiff's SEVIS status and order the preservation of the *status quo ante*;

(d)    Enter an order enjoining Defendants from taking any action adversely affecting Plaintiff's SEVIS status without notice to Plaintiff and his counsel and the Court during the pendency of this action;

(e)    Order that Defendants restore Plaintiff's SEVIS records and status *nunc pro tunc*, without interruption or adverse notation;

(f)    Grant a preliminary and permanent injunction prohibiting Defendants from taking any adverse actions or imposing any adverse consequences to Plaintiff based on or arising from the unlawful termination of SEVIS registration;

(g)    Award costs and reasonable attorneys' fees under that Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

(h)    Grant such other and additional relief of every kind and nature as the Court deems just and proper.

Dated: May 8, 2025                            Respectfully submitted,

*/s/    Mary Ann Wymore*
Mary Ann L. Wymore  (MO #44061)
UB GREENSFELDER LLP
10 South Broadway, Suite 2000
Saint Louis, Missouri  63102
Phone:  (314) 345-5400
Fax:  (314) 241-8674
mwymore@ubglaw.com

David W. Leopold (OH #0029693)
David D. Yeagley (OH #0042433)
Dolores P. Garcia (OH #0085644)
*Pro hac vice applications forthcoming*
UB GREENSFELDER LLP
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax: (216) 583-7001
dleopold@ubglaw.com
dyeagley@ubglaw.com
dgarcia@ubglaw.com

*Attorneys for Plaintiff Student Doe*